IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kenneth Wilson Norwood,<br><br>    Plaintiff,<br><br>vs.<br><br>Suzan Hubbard, et al.,<br><br>    Defendants. | No. 1:07-CV-00889-SMM<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Plaintiff is a California state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983 (2006). On September 11, 2006, Plaintiff suffered serious injuries in an altercation with another inmate at the California State Prison in Corcoran, California ("CSP-Corcoran"). As a result of the incident, Plaintiff brought multiple claims against California Department of Corrections' employees for allegedly violating his constitutional rights. (Doc. 24.) Defendants Brandon, Canedo, Frescura, Gonzales, Keener, Koehler, Morales, Pascua, Price, and Maldonado ("Defendants") were all employees of the California Department of Corrections and Rehabilitation assigned to CSP-Corcoran and working on the night of the incident. (Doc. 90-2 at 2.) Before the Court is Defendants' Motion for Summary Judgment on Plaintiff's claim that Defendants violated the Eighth Amendment by acting with deliberate indifference to his medical needs. (Doc. 90.) Plaintiff responded (Doc. 146), and Defendants replied. (Doc. 151.) Having reviewed and considered both parties' written memoranda and the evidence submitted in support, the Court concludes that Plaintiff has failed to establish that Defendants were deliberately indifferent to his medical needs.

**BACKGROUND**

On September 11, 2006, Plaintiff Kenneth Norwood ("Norwood") was incarcerated in the Security Housing Unit building 4B2L at CSP-Corcoran. Shortly before 7:00 p.m. that night, Control Booth Officer Steven Carter ("Carter") opened cell 51 and allowed inmate James Diesso ("Diesso") to exit his cell, allegedly so that Carter could counsel him. (Doc. 90-4 at 12-13, 60; Doc. 146-2 at 16.) As Diesso proceeded to the control booth, Norwood's cell, number 55, was also opened. (Doc. 90-4 at 60.) Diesso rushed up the stairs, and the inmates began to fight. (Doc. 90-4 at 60; Doc. 146-2 at 18-21.) During the altercation, Diesso stabbed Plaintiff multiple times with a sharp object, and Plaintiff suffered severe injuries. (Doc. 90-4 at 23-27.) Sometime between 7:00 and 7:09 p.m. the altercation ended. (Doc. 90-2 at 2; Doc. 146-2 at 21.) Officer Carter locked both inmates back in their cells and called Officers Price, Frescura, and Brandon to inform them of the incident. (Doc. 90-5 at 2-11; Docs. 146-11, 146-13 & 14.)

Price, Frescura, and Brandon were in their assigned offices in Security Housing Unit building 4B2L when Officer Carter informed them that a fight had taken place. (Id.) Carter did not inform them that a stabbing had taken place. (Doc. 90-5 at 3.) Price proceeded immediately to inmate Diesso's cell and found that Diesso appeared fine with no visible injuries. (Id. at 11.) Frescura and Brandon went immediately to Norwood's cell where they saw blood on the floor and found him lying with his upper torso bloodied. (Id. at 2-8.). Frescura stayed with Norwood while Brandon "ran" to retrieve the stokes liter, a gurney device used for prisoner transport. (Id.) Brandon informed Price who advised Sergeant Maldonado that Norwood had been stabbed and needed an Emergency Response Vehicle ("ERV"). (Id. at 11.) Sergeant Maldonado responded, went to Norwood's cell, and requested that an ERV be dispatched. (Id. at 13-15.) CSP-Corcoran dispatch records show that the request for an ERV was received at 7:08 p.m. (Doc. 90-4 at 24.) Frescura, Brandon, and Price placed Norwood on the stokes liter and moved him to the rotunda area of the Security Housing Unit 4B2L. (Doc. 90-5 at 3.)

Licensed Vocational Nurse ("LVN") Gonzales arrived at 7:05 p.m. and began treating

- 2 -

Norwood. (Id. at 3, 17-19.) Gonzales treated those wounds actively bleeding by placing gauze on the wounds and asking officers to put on gloves and apply pressure to the wounds. (Id. at 17-19.) Norwood complained that he could not breathe. (Id.) Gonzalez attempted to check his oxygen level, but was unable to get a reading. (Id.) LVN Morales was also assisting in the treatment of Norwood. (Id. at 21-22.) Sergeant Maldonado called Officers Pascua and Koehler, requesting that they escort Norwood to the prison hospital (John D. Klaritch Memorial Hospital, "JDKMH"). (Id. at 13-15.) When the ERV arrived, Registered Nurse Canedo took over treatment, and Norwood was transported to JDKMH. (Id. at 17-22.)

Shortly after 7:00 PM, Officers Pascua and Koehler confirmed that they received a call from Sergeant Maldonado to respond to the incident and provide an escort for Norwood to the JDKMH. (Doc. 90-5 at 27-31.) When they arrived, they saw Norwood on the rotunda floor with LVN Gonzalez providing treatment. (Id.) They escorted Norwood to JDKMH. (Id.)

Lieutenant Keener was not at the incident location at the time of the altercation. (Id. at 24-25.) At 7:10 p.m. he was notified by radio that an ERV was arriving and to respond to the location of the emergency. (Id.). Lt. Keener proceeded to the location, but by the time he arrived the ERV had already left the area on its way to JDKMH. (Id.)

The ERV transported Norwood and arrived at JDKMH at 7:19 p.m. (Doc. 90-4 at 24; 90-5 at 34.) Norwood received care at JDKMH by Dr. Reynolds, until Dr. Reynolds determined that his condition warranted transfer to an outside hospital. (Doc. 90-4 at 28-30.) An outside ambulance service was called to transport Norwood. (Id.) American Ambulance Company ("AAC") received a call to transport Norwood at 7:27 p.m. (Doc. 90-4 at 52.) They were at the prison gate at 7:33 p.m., made contact with Norwood at 7:44 p.m., and transported him at 7:56 p.m. (Id.) At 8:06 p.m., AAC arrived at the rendezvous site outside the prison where Norwood was being transported by helicopter to the outside hospital. (Id. at 54.)

**STANDARD OF REVIEW**

A Court must grant summary judgment if the pleadings and supporting documents,

1   viewed in the light most favorable to the nonmoving party, "show[] that there is no genuine
2   dispute as to any material fact and the movant is entitled to judgment as a matter of law."
3   Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v.
4   Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  Substantive law determines
5   which facts are material.  See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also
6   Jesinger, 24 F.3d at 1130.  "Only disputes over facts that might affect the outcome of the suit
7   under the governing law will properly preclude the entry of summary judgment."  Anderson,
8   477 U.S. at 248.  The dispute must also be genuine, that is, the evidence must be "such that
9   a reasonable jury could return a verdict for the nonmoving party."  Id.; see Jesinger, 24 F.3d
10  at 1130.

11         A principal purpose of summary judgment is "to isolate and dispose of factually
12  unsupported claims." Celotex, 477 U.S. at 323-24.  Summary judgment is appropriate against
13  a party who "fails to make a showing sufficient to establish the existence of an element
14  essential to that party's case, and on which that party will bear the burden of proof at trial."
15  Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).  The
16  moving party need not disprove matters on which the opponent has the burden of proof at
17  trial.  See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not
18  produce evidence "in a form that would be admissible at trial in order to avoid summary
19  judgment." Id. at 324.  However, the nonmovant "may not rest upon the mere allegations or
20  denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is
21  a genuine issue for trial."  FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v
22  .Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53
23  F.3d 1044, 1049 (9th Cir. 1995).

24         To establish a § 1983 claim for violation of the Eighth Amendment based on
25  inadequate medical care, a plaintiff must demonstrate "acts or omissions sufficiently harmful
26  to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S.
27  97, 106 (1976). This requires the plaintiff to satisfy both the objective and subjective
28  components of a two-part test. Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002). First,

- 4 -

1  the plaintiff must demonstrate that he or she suffered a medical need that was objectively
2  serious. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.2006).  Second, the plaintiff must show
3  that the defendant's response to that serious medical need was deliberately indifferent.
4  "[D]eliberate indifference to a prisoner's serious medical needs is the 'unnecessary and
5  wanton infliction of pain.'" Estelle, 429 U.S. at 104–05.  An official is deliberately
6  indifferent if he both knows of and disregards an excessive risk to an inmate's health.
7  Farmer v. Brennan, 511 U.S. 825, 837 (1970). "Neither negligence nor gross negligence will
8  constitute deliberate indifference." Clement v. California Dep't of Corrections, 220
9  F.Supp.2d 1098, 1105 (N.D. Cal. 2002) ; see also Broughton v. Cutter Labs., 622 F.2d 458,
10 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice"
11 do not support a claim under § 1983). "A difference of opinion does not amount to deliberate
12 indifference to [a plaintiff's] serious medical needs." Sanchez v. Vild, 891 F.2d 240, 242 (9th
13 Cir. 1989). The indifference must be substantial. Deliberate indifference amounts to criminal
14 recklessness; a defendant must have known that a plaintiff was at serious risk of being
15 harmed and decided not to do anything to prevent that harm from occurring. See Farmer, 511
16 U.S. at 836-837.

17   A mere delay in medical care, without more, is insufficient to state a claim against
18 prison officials for deliberate indifference. See Shapley v. Nevada Bd. of State Prison
19 Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Plaintiff must set forth evidence establishing
20 that the delay in receiving treatment caused him further harm.  Id.

21   When a prisoner attempts to hold a prison employee responsible for deliberate
22 indifference, the prisoner must establish individual fault. Leer v. Murphy, 844 F.2d 628, 634
23 (9th Cir. 1988). Sweeping conclusory allegations will not be sufficient to prevent summary
24 judgment. Id. "The prisoner must set forth specific facts as to each individual defendant's
25 deliberate indifference." Id. He must prove that the specific prison official was deliberately
26 indifferent and that this indifference was the actual and proximate cause of the injury. Id.
27 State officials are subject to suit under § 1983 only if "they play an affirmative part in the
28 alleged deprivation of constitutional rights." King v. Atiyeh, 814 F.2d 565, 568 (9th Cir.

1987).

## DISCUSSION

Norwood alleges that the individual Defendants were deliberately indifferent to his medical needs because they delayed by as much as thirty to fifty minutes to come to his aid after having been repeatedly stabbed during an altercation. (Doc. 146 at 10-11, 16-17.) In Norwood's opposition to summary judgment he does not dispute that prison officials medically attended to him after the attack, that they transported him to the prison hospital, and subsequently transferred him to an outside hospital for further treatment. He disputes the timing of when Defendants provided medical treatment, alleging that they unreasonably delayed in his treatment. (See Doc. 146 and accompanying exhibits.) Norwood does not contend that the alleged delay in treatment caused him further harm. (See, e.g., Doc. 146 at 27, 38.)

Norwood's factual allegations are insufficient to establish a genuine dispute regarding the material facts of his deliberate indifference claim; consequently, the individual Defendants are entitled to summary judgment. First, it is undisputed that the altercation occurred shortly before 7:00 p.m. and lasted for a few minutes. (Doc. 90-4 at 12-13, 60; Doc. 146-2 at 16, 30.) Although Norwood alleges that it took somewhere between thirty to fifty minutes for him to receive medical care, he testified that he never looked at a clock to establish how much time passed before medical care first arrived. (Doc. 146-2 at 30-31.) Rather, Norwood testified that he "could pretty much feel the time" (id. at 30) and according to his own estimate medical care did not arrive for thirty to fifty minutes. (Id. at 31.)

In contrast to Norwood's conclusory allegation, the individual Defendants provided both prison records and their declarations contradicting Norwood's account and establishing that they provided him with prompt medical attention. The actions of the individual Defendants demonstrating prompt medical care is summarized below. Shortly after the altercation ended, Officer Carter notified Defendants Price, Frescura, and Brandon that a fight had taken place, and they responded immediately to the scene. (Doc. 90-5 at 2-11, Docs. 146-11, 146-13 & 146-14.) Prison records document Defendant Frescura arrived at

- 6 -

1  the scene at 7:05 p.m and radioed for medical care for Norwood. (Doc. 90-4 at 24.)
2  Defendant Brandon testified that he was with Frescura at Norwood's cell before he was sent
3  to obtain a stokes liter to move Norwood. (Doc. 90-5 at 3.) On his way, Defendant Brandon
4  requested Defendant Price to advise Defendant Maldonado that he was needed at the scene
5  and that Norwood needed an ERV transport. (Id.) Price complied. (Id. at 11.) Maldonado
6  responded to the scene and requested that an ERV be sent, which request prison records
7  document as being received at 7:08 p.m. (Id. at 14-15; Doc. 90-4 at 24.) Once the stokes
8  liter arrived, Defendant Maldonado had Defendants Price, Brandon, and Frescura remove
9  Norwood from his cell onto the stokes liter and transport him to the front of the housing unit
10 to await the ERV. (Doc. 90-5 at 3-14.) While awaiting the ERV, Defendants Gonzales and
11 Morales, both LVN's, responded to the scene and began providing medical treatment to
12 Norwood. (Id. at 17-22.) When the ERV arrived, Defendant Canedo, an RN, took over
13 treatment of Norwood. (Id. at 18.) Defendants Canedo, Pascua, and Koehler escorted
14 Norwood in the ERV transporting him to JDKMH. (Id. at 17-22, 27-31.)

15 Norwood arrived at the prison hospital at 7:19 p.m. (Doc. 90-4 at 24.) Defendant
16 Keener was not at the incident location at the time of the altercation. (Id. at 24-25.) At 7:10
17 p.m. he was notified by radio that an ERV was arriving and to respond to the location of the
18 emergency. (Id.). Defendant Keener proceeded to the location, but by the time he arrived
19 the ERV had already left the area on its way to JDKMH. (Id.) Thus, the evidence
20 unequivocally establishes that the individual Defendants promptly responded and provided
21 medical treatment to Norwood.

22 Norwood attempts to dispute Defendants' account of the timing of events by
23 submitting the records of the outside hospital he was transported to: University Medical
24 Center ("UMC") near Fresno, California. (Doc. 146-6.) However, Norwood's submitted
25 evidence does not contradict the evidence submitted by the Defendants. Rather, Norwood's
26 records establish the time that the helicopter received him, 8:10 p.m., and his arrival time at
27 UMC, 8:47 p.m. (Id. at 10-11.) The records do not support Norwood's allegation that he did
28

not receive medical care for thirty to fifty minutes following his altercation.[1]

Moreover, Norwood has failed to allege how such delay caused him any harm. See Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (stating that delay standing alone does not constitute an Eighth Amendment deliberate indifference violation); see also Shapley, 766 F.2d at 407 (same).

Accordingly, for the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants Brandon, Canedo, Frescura, Gonzales, Keener, Koehler, Morales, Pascua, Price, and Maldonado's Motion for Summary Judgment is **GRANTED**. (Doc. 90.) Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against these Defendants is **DENIED** and **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Defendants Brandon, Canedo, Frescura, Gonzales, Keener, Koehler, Morales, Pascua, Price, and Maldonado are **DISMISSED** from this action.

**IT IS FURTHER ORDERED** denying as moot Plaintiff's motion for the Court to supply him with a copy of his sur-reply. (Doc. 154.

DATED this 8th day of December, 2011.

_____
Stephen M. McNamee
United States District Judge

---

[1] Following the filing of Defendants' reply in support of summary judgment, Norwood filed a sur-reply without leave of Court. (Doc. 153.) The Court's Local Rules do not permit the filing of a sur-reply without leave of Court. See L.R. 230. However, the Court has reviewed Norwood's sur-reply and considered his arguments. The sur-reply does not contribute substantively to his argument that he did not receive prompt medical care following his altercation.